# ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DIST. COURT
SAVANNAH DIV

JUL 20   4 41 PM '99

CLERK
SO. DIST. OF GA.

| | |
|---|---|
| ROBERT F. GOLDSTEIN, M.D.<br><br>    Plaintiff<br><br>-vs-<br><br>MAGNOLIA MEDICAL CENTER, P.C.<br>and MAHER ASTWANI, M.D.<br><br>    Defendants | **CV399-043**<br><br>CIVIL ACTION NO. _____ |

### COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, ROBERT F. GOLDSTEIN, M.D. (hereinafter Goldstein) and files this Complaint for Damages, showing as follows:

### JURISDICTION

1.

Defendant Magnolia Medical Center, P.C. (hereinafter Magnolia) is a professional corporation organized under the laws of the State of Georgia with an office and place of doing business in Laurens County, Georgia at 2688 Moore Station Road, Dublin, Georgia 31021.

2.

Upon information, Defendant Maher Astwani, M.D. (hereinafter Astwani) is a resident/citizen of Dougherty County, Georgia.

3.

Plaintiff Robert F. Goldstein, M.D., is a resident/citizen of Germantown, Tennessee.

4.

The matter in controversy in this lawsuit exceeds the sums/value of $75,000.00.

5.

Pursuant to the above, this Court has original jurisdiction of this civil action under 28 U.S.C. §1332.

**VENUE**

6.

Venue is proper because Defendant Magnolia has an office and place of doing business in Dublin, Georgia and a substantial part of the events giving rise to the claims herein occurred in Dublin, Georgia.

**FACTS**

7.

On March 26, 1998 Magnolia and Goldstein entered into a one year written employment agreement.

8.

By letter dated December 26, 1998, Dr. Goldstein gave ninety (90) day notice, effective 4/1/99, that he was resigning his position with Magnolia at the end of the one year term and that his last day of work would be 3/31/99.

9.

By letter dated January 4, 1999, Astwani and Magnolia accepted the above-referenced ninety (90) day notification of resignation. In reliance upon this acceptance, Dr. Goldstein continued to work for and see patients on behalf of Magnolia and Dr. Astwani.

10.

On February 4, 1999, Dr. Astwani, acting for and on behalf of Magnolia, unilaterally and without just cause or legal basis, terminated Dr. Goldstein, effective immediately. By these actions, Magnolia and Astwani breached the terms of the employment agreement with Dr. Goldstein and caused monetary and other damage to him.

11.

In connection with the February 4, 1999 termination of Dr. Goldstein, Magnolia and Astwani voluntarily and knowingly published to the Dublin, Georgia medical community a letter informing that Dr. Goldstein was being dismissed immediately due to poor support in the community and steady interpersonal conflicts.

12.

By letter dated February 18, 1999, Magnolia Medical Center, by and through its agent and employee Janice L. Wheeler, published a letter to third parties (*i.e..* Wisconsin Department of Labor representatives) stating that Dr. Goldstein was

discharged for discourtesy to patients, refusing to see certain patients and discourtesy to peers and employees. The letter goes on to state that Dr. Goldstein's presence was detrimental to Magnolia's practice and that Dr. Astwani discharged him in order to "salvage the practice".

13.

By letter dated April 8, 1999, Dr. Richard Drewry, Chairman of the Credentials Committee for Baptist Memorial Hospital in Memphis, Tennessee, communicated with Dr. Goldstein regarding information provided to the Baptist Memorial Hospital Credentials Committee by Dr. Astwani and Magnolia. Said letter dated April 8, 1999 reflects that Dr. Astwani and Magnolia made statements and assertions that Dr. Goldstein had allegedly had his "medical privileges" suspended at Magnolia Medical Center for conflict with patients, employees and peers, avoidance of work and lack of good work ethics, poor professional judgment, poor fund of knowledge and misrepresentation of his curriculum vitae.

## COUNT ONE - LIBEL

14.

The above paragraphs 1 through 13 are incorporated by reference as if set forth verbatim herein.

15.

The above-described statements of Defendants about Dr. Goldstein reflected in the letters of February 4, 1999, February 18, 1999 and April 8, 1999 published to members of the Dublin,

4

Georgia and Memphis, Tennessee medical communities and others, were without basis in fact and displayed a reckless disregard for the reputation of Plaintiff Goldstein. Defendants' publication of these statements about Dr. Goldstein was malicious, tended to injure Dr. Goldstein's reputation and necessarily exposed him to public contempt and ridicule and, therefore, constitute libel *per se*.

16.

As reflected by the above letters, the libelous statements were made by Astwani and/or other agents and employees of Magnolia within the scope of Magnolia's business and in the course of said agents and employees employment with Magnolia. Accordingly, the above-named Defendants are jointly and severally liable in monetary damages for said statements. Legal liability for said libelous statements is also imputable to Magnolia and, as such, Magnolia is vicariously libel for any and all damages to Dr. Goldstein resulting from said statement.

17.

Defendants conduct in repeatedly publishing false and defamatory statements regarding Dr. Goldstein demonstrates malice, wantonness, and/or that entire want of care which would raise the presumption of conscious indifference to the consequences, thus entitling Plaintiff to an award of punitive damages for these actions.

18.

By certified letter dated May 27, 1999, Plaintiff requested that Defendants retract the above-referenced statements published about Dr. Goldstein in the above-referenced letters of February 4, 1999, February 18, 1999, as well as the statements made to Baptist Memorial Hospital as reflected in the above-reference letter of April 8, 1999. To-date, Defendants have not made retractions of any of the above-referenced statements about Dr. Goldstein.

19.

Plaintiff further shows that Defendant has acted in bad faith in publishing the above-referenced statements and has subsequently been similarly litigious and has caused the Plaintiff unnecessary trouble and expense. Accordingly, Plaintiff is entitled to an award of costs and attorney's fees in this action in addition to the damages which have been caused by the repeated publishing of false and defamatory statements. The specific amount of said costs and attorney's fees will be demonstrated and proven at the trial of the case.

## COUNT TWO – BREACH OF CONTRACT

20.

The above paragraphs 1 through 19 are incorporated herein by reference as if set forth here again in their entirety

6

21.

Defendants' wrongful termination/breach of the contract with Dr. Goldstein caused significant consequential damages to him including, but not limited to, the following:

a.   Loss of salary through the end of the previously agreed upon end of the contract period on 3/31/99;

b.   By and through wrongful termination of Dr. Goldstein's medical malpractice insurance in connection with the "dismissal" on February 4, 1999, Dr. Goldstein was temporarily prevented from seeing patients and earning a living in his profession;

c.   In connection with the wrongful termination of the contract by Defendants on February 4, 1999, Defendants also unilaterally and immediately cancelled Dr. Goldstein's group medical coverage, thus wrongfully forcing him to seek, at his own expense, medical insurance to protect himself and his family for the remainder of the contract term;

d.   Even assuming that the February 4, 1999 unilateral termination of the contract by Defendants was legal (which is denied) it is without dispute that Plaintiff worked for and on behalf of Defendants during the week of February 1 through February 5, 1999; however, Defendants have wrongfully and intentionally withheld Dr. Goldstein's salary for that period of time, thus

further specifically and independently breaching the contract and damaging him to that extent;

e.      Under the terms of the attached employment agreement, Dr. Goldstein was entitled to finish his professional duties with Defendants and further entitled to a $10,000.00 bonus to the extent that his collected accounts receivable would have exceeded $300,000.00 at the end of this first year. Because Dr. Goldstein has been wrongfully deprived of the opportunity to work and earn this $10,000.00 bonus, he is entitled to damages in this amount or, in the alternative, a strict and thorough accounting of Defendants' books to determine the status of said receivables and/or whether or not Dr. Goldstein did or could have reasonably met the conditions to obtain said bonus in the absence of Defendants' breach.

22.

At all times relevant hereto, Dr. Goldstein acted in accordance with his obligations under his employment agreement with Defendants and, by Defendants wrongful conduct, was prevented from completing performance of his obligations through 3/31/99 as initially accepted and agreed to by Defendants.

23.

Plaintiff further shows that Defendant has acted in bad faith in breaching the above-referenced contract and has

8

subsequently been similarly litigious and has caused the Plaintiff unnecessary trouble and expense. Accordingly, Plaintiff is entitled to an award of costs and attorney's fees in this action in addition to the damages which have been caused by the breach of contract. The specific amount of said costs and attorney's fees will be demonstrated and proven at the trial of the case.

## COUNT THREE-CONVERSION

24.

The above paragraphs 1 through 23 are incorporated by reference as if set forth verbatim herein.

24.

As set forth above, even assuming arguendo that the February 4, 1999 termination of the contract was legal and valid (which is denied) Dr. Goldstein nevertheless worked for and on behalf of Defendants from February 1, 1999 through February 5, 1999 and is entitled to his salary in the amount of $2,291.66 for that period. However, Defendants have wrongfully and intentionally withheld that amount and wrongfully asserted dominion over the personal property of Dr. Goldstein. This conduct constitutes conversion of funds for which Dr. Goldstein is entitled to recover damages.

25.

Defendants conduct in wrongfully withholding and converting Dr. Goldstein's duly earned salary for the time period from

2/1/99-2/5/99 demonstrate malice, wantonness and/or show such an entire want of care that said conduct raises the presumption of conscious indifference to the consequences and entitles Dr. Goldstein to an award of punitive damages with respect to this conduct.

26.

Plaintiff further shows that Defendant has acted in bad faith in wrongfully and intentionally withholding funds and asserting dominion over the personal property of Plaintiff and has subsequently been similarly litigious and has caused the Plaintiff unnecessary trouble and expense. Accordingly, Plaintiff is entitled to an award of costs and attorney's fees in this action in addition to the damages which have been caused by the wrongful and intentional withholding of funds and assertion of dominion over the personal property of Plaintiff. The specific amount of said costs and attorney's fees will be demonstrated and proven at the trial of the case.

### COUNT FOUR - TORTIOUS INTERFERENCE WITH EMPLOYMENT

27.

The above paragraphs 1 through 26 are incorporated by reference as if set forth verbatim herein.

28.

Defendants' conduct in communicating information to the

10

Baptist Memorial Hospital Credentialing Committee, as set forth above, wrongfully and tortiously interfered with Dr. Goldstein's then existing employment relationship with the Semmes-Murphey Clinic resulting in damage to said employment relationship. This damage includes, but is not necessarily limited to, the loss of $7,812.48 in salary during the time period when his credentials at a local medical institution were being withheld pending investigation of the statements made by Magnolia and Dr. Astwani.

29.

Defendants' conduct in wrongfully and tortiously interfering with the above-described employment relationship demonstrates malice, wantonness and/or that entire want of care which would raise a presumption of conscious indifference to the consequences, thus entitling Plaintiff to an award of punitive damages for these actions.

30.

Plaintiff further shows that Defendant has acted in bad faith in wrongfully and tortiously interfering with Plaintiff's above-described employment relationship and has subsequently been similarly litigious and has caused the Plaintiff unnecessary trouble and expense. Accordingly, Plaintiff is entitled to an award of costs and attorney's fees in this action in addition to the damages which have been caused by the wrongful and tortious interference with Plaintiff's employment relationship. The specific amount of said costs and attorney's fees will be

11

demonstrated and proven at the trial of the case.

WHEREFORE, Plaintiff prays:

a)  That process be issued and summons be served as provided by law;

b)  That judgment be entered in favor of Plaintiff and against Defendants, jointly and severally, for sums, to be proven in a specific amount at trial, representing damage for breach of contract;

c)  That judgment be entered in favor of Plaintiff and against Defendants, jointly and severally for sums, to be proven in a specific amount at trial, for conversion of funds plus an additional award of punitive damages for this conduct in an amount to be determined by the enlightened conscience of the jury;

d)  That judgment be entered in favor or Plaintiff and against Defendants, jointly and severally, for publication of statements constituting libel *per se*, for which Plaintiff is entitled to recover general damages in an amount to be determined by the enlightened conscience of the jury, without a showing of special damages and/or such other special damages as are specifically proven.  Further, Plaintiff is entitled to an award of punitive damages for this conduct in an amount to be determined by the enlightened conscience of the jury;

e) That judgment be entered in favor of Plaintiff and against Defendants, jointly and severally, for tortious interference with Plaintiff's employment relationship, for which Plaintiff is entitled to recover special and general damages. Further, Plaintiff is entitled to an award of punitive damages for this conduct in an amount to be determined by the enlightened conscience of the jury;

f) That all costs of this action be assessed against Defendants, jointly and severally;

g) That Plaintiff have a trial by jury;

h) That Plaintiff have such other and further relief as this Court may deem necessary and appropriate.

This _20th_ day of _July_, 1999.

BOUHAN, WILLIAMS & LEVY LLP

BY: _____
JOSEPH A. MULHERIN, III
Georgia Bar No. 527910

By: _____
WILBUR D. OWENS, III
Georgia Bar No. 557810

ATTORNEYS FOR PLAINTIFF

Post Office Box 2139
Savannah, Georgia  31412
(912) 236-2491